## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| **JAMAR STATEN,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) **Case No:** |
| | ) |
| **MICHELE BUCKNER,** | ) |
| **Warden, South Central** | ) |
| **Correctional Center,** | ) |
| | ) |
| **Respondent.** | ) |

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

COMES NOW petitioner Jamar Staten by and through counsel, and submits to this Court his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Introduction

Mr. Staten's unconstitutional conviction was the result of a jury tainted by a retired Missouri State Highway Patrolman's false comments during the voir dire regarding Mr. Staten's criminal record. Also, pretrial and trial counsel were ineffective for failing to seek a change of venue from a county in which his family's criminal activity was well known. A reasonably competent attorney in a similar situation would have requested a change of venue. Also, trial counsel was ineffective during sentencing in failing to present evidence of Mr. Staten's

-1-

immaturity and counter the court's refusal to consider petitioner's age (20 years old) at the time of the offense. Reasonably competent counsel would have been aware of the developmental science regarding young adults. For the reasons set out in Mr. Staten's habeas petition, he is entitled to habeas relief for his unconstitutional conviction and sentence.

## Procedural Background

Mr. Staten was convicted by a jury on June 1, 2016, of one count of assault in the first degree, and one count of armed criminal action. *See State v. Staten*, No. 15PT-CR00944-0 (18th Judicial Circuit). After a penalty phase, the jury recommended 22 years for assault and 20 years for armed criminal action. On July 9, 2016, the court followed the jury's recommendation, and ran those sentences concurrently sentencing Mr. Staten to an aggregate sentence of 22 years imprisonment. On July 14, 2016, Mr. Staten filed a notice of appeal of his convictions. On July 18, 2017, the Missouri Court of Appeals, Western District, issued an opinion affirming Mr. Staten's convictions. *State v. Staten*, 524 S.W.3d 186 (Mo. App. W.D. 2017). Mr. Staten did not seek post-opinion relief and the court of appeals's mandate was issued on August 9, 2017.

On October 18, 2017, Mr. Staten timely filed his *pro se* motion for postconviction relief under Rule 29.15. *See Staten v. State,* No. 17PT-CC00300 (18th Judicial Circuit). The motion court appointed counsel and granted an additional thirty days to file Mr. Staten's amended motion. After an

-2-

evidentiary hearing was held, the motion court denied relief on February 6, 2019.

A timely notice of appeal was filed on March 7, 2019. The Missouri Court of

Appeals, Western District affirmed the motion court denial of postconviction

relief on March 31, 2020. *See Staten v. Staten*, No. WD82631 (Mo. App. W.D.

2020). Mr. Staten filed no post-opinion motions and the court of appeal issued

its mandate on April 22, 2020. *Id.*

Mr. Staten has no proceedings challenging his convictions and sentences

currently pending in any state or federal court.

## Timeliness Statement

Mr. Staten's petition is timely under 28 U.S.C. § 2244(d)(1.(2). His 1-year

period of limitation did not begin to run until August 2, 2017. This date is fifteen

days after the court of appeals issued its opinion on July 18, 2017, which is how

long Mr. Staten had to file a motion for rehearing/application for transfer in the

court of appeals. Because he did not file a post-opinion motion, his conviction

became final on August 2, 2017. *See* 28 U.S.C. § 2244(d)(1)(A). On October 18,

2017, Mr. Staten filed his *pro se* Form 40 which stopped the running of the

limitations period. *See* 28 U.S.C. § 2244(d)(2). Mr. Staten's federal habeas

petition was not tolled for the 77 days between Mr. Staten's appeal becoming final

and the filing of the Form 40. Mr. Staten's one-year limitation period was tolled

until April 22, 2020, the date in which the Missouri Court of Appeals issued its

mandate in his postconviction appeal. *See Payne v. Kemna*, 441 F3d 570, 572 (8th

Cir. 2006). Subtracting the 77 days during which the limitation period was not tolled, Mr. Staten has 288 days from April 22, 2020, or until February 4, 2021, to file his federal habeas petition.

## Factual Background

The facts relevant to each stage of the case are summarized below. Additional facts are included in the sections concerning the grounds for relief.

### *Trial.*

The Missouri Court of Appeals summarized the evidence presented at trial most favorably to the state as follows:

> Staten and his brother Rodney Jackson ("Jackson") went to a party attended by Jackson's girlfriend Crystal Coke ("Coke") on or about August 2, 2015. Coke refused to leave the party and had an argument with Jackson. The hosts of the party, Alex and Shandi Kosgei, requested that Jackson and Staten leave. The two men left the party but returned shortly thereafter.
>
> A confrontation ensued between Alex Kosgei ("Alex"), 2 Coke, Staten, and Jackson that resulted in the stabbing of Alex. Alex testified that Staten lunged toward him and stabbed him in the stomach. Two additional witnesses testified that they saw Staten lunge toward Alex, which was followed by Alex dropping to the ground with a stab wound.

*State v. Staten*, 524 S.W.3d 186, 188 (Mo. App. W.D. 2017).

### *Direct Appeal.*

Mr. Staten filed a timely notice of appeal. He raised one point of trial court error on appeal. Specifically, he argued that the trial court erred in overruling his motion for a mistrial during voir dire because the jury selection

process violated petitioner's due process right to a fair trial, a fair and impartial jury, and his right to be tried only for the crimes charged in that the entire venire panel was tainted by the comments of Veniremember #47 who said to the veniremembers sitting nearby that Mr. Staten and his family had been involved in drugs. (App. Br., pp. 10, 11). [1]   The Missouri Court of Appeals, Western District, affirmed Mr.  Staten's conviction and sentence.  *See State v. Staten*, 524 S.W.3d 186 (Mo. App. 2017).

### *Postconviction proceeding.*

Mr. Staten timely filed a pro se postconviction motion under Rule 29.15. Subsequently, appointed counsel filed a timely amended postconviction motion. In his amended motion, Mr. Staten raised seven claims of ineffective assistance of pretrial, trial and sentencing counsel.  Petitioner alleged that: (1) he was denied his right to effective assistance and a fair trial when pre-trial counsel, Jeffrey Nilson, and trial counsel, Robert Cook, failed to move for a change of venue on movant's behalf upon movant's request for same; (2) trial counsel, Robert Cook, failed to adequately consult with Mr. Staten regarding the strengths and weaknesses of the state's case and the weaknesses in the available defenses attempted by counsel and unreasonably failed to pursue a self-defense strategy at

_____

[1]Mr. Staten will cite to the trial transcript as "(Tr.)," the direct appeal legal file as "(L.F.)," the direct appeal brief as "(App. Br.), the postconviction hearing transcript as "(PCR Tr.)," and the postconviction legal file as "(PCR L.F.)."  Mr. Staten notes that the respondent will eventually file these documents as exhibits in its response.

-5-

trial; (3) trial counsel was ineffective for failing to object to prosecution questions designed to elicit comments on the credibility of other state witnesses and which called for unsubstantiated speculation the guise of unqualified expert opinion testimony; (4) trial counsel was ineffective for failing to adequately investigate, prepare for trial, and impeach his own witness, Leland Amberg, when it became clear that his trial testimony did not match his prior statements given directly to counsel prior to trial; (5) sentencing phase counsel, Robert Cook, was ineffective when he called Mr. Staten's fiancé, Karimah Stone, to testify on movant's behalf at the sentencing phase of the bifurcated trial; (6) sentencing counsel, Robert Cook, was ineffective for failing to object and request a change of judge for sentencing when the Court revealed that it had went back and looked at movant's juvenile record; and (7) trial counsel was ineffective for failing to object to improper personalization during closing argument by the state designed to cause undue fear or apprehension by the jurors. (PCR L.F., D.5, pp. 2-3).

After holding an evidentiary hearing, the motion court denied the amended motion. Mr. Staten timely appealed raising one point on appeal alleging that the motion court clearly erred in denying the amended motion. Specifically, Mr. Staten argued that his pretrial and trial counsel were ineffective for failing to request a change of venue. On March 31, 2020, the court of appeals affirmed the judgment denying Mr. Staten's amended motion on appeal. *See Staten v. State*, No. WD82631 (Mo. App. W.D.). Mr. Staten filed no post-opinion motions and

the appellate court's mandate issued on April 22, 2020.

## Grounds for Relief

### A.   *Trial Court Error*

*1.    Mr. Staten was denied his rights to due process of law, and proof beyond a reasonable doubt in violation of the Sixth and Fourteenth Amendments of the United States Constitution when the trial court denied his motion for a mistrial during voir dire.*

*Supporting facts:* On direct appeal, Mr. Staten argued that the trial court abused its discretion when it overruled his motion for mistrial during voir dire.  Specifically, Mr. Staten argued that the voir dire panel was tainted because one of the panelist, retired Missouri State Highway Patrol trooper Mr. Bone, told nearby sitting veniremembers that Mr. Staten and his family had been involved in drugs.

During voir dire, the prosecutor asked if the panel had any prior dealings with him, as the prosecutor, or with the defense attorney.   (Tr. 17-18).   Mr. Bone responded by saying, that he had worked with the prosecutor's office, "and I've had dealings with the Defendant's family down through the years." (Tr. 23).  He further said that he would "not necessarily" be incapable of being fair and impartial, but "I've got to be honest with you and tell you I think it has influenced me somewhat."

-7-

During defense counsel's voir dire examination, defense counsel asked if any of the panelists knew Mr. Staten's family. (Tr. 60). Mr. Bone replied, "I know them professionally, the family for the past 20 years." (Tr. 60). At the end of defense counsel's examination, the court took up private answers from veniremembers. (Tr. 67).

Venireperson 25, Mr. Williams, told the court,

> I believe – I'm not – I'm not sure, but there was an officer behind me, I believe it was Mr. Bone.
>
> THE COURT: Uh-huh.
>
> MR. WILLIAMS: And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges.
>
> THE COURT: Uh-huh.
>
> MR. WILLIAMS: I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases. It seems to me, not having ever served on a jury before, that that would bias the jury and I -- I just asked for point of law on that.
>
> THE COURT: Questions?
>
> MR. SAWYER [prosecutor]: So that I know that I'm clear, because, obviously, I know what his history is and what it is not. You believe you heard something that you think was directed towards the Defendant?
>
> MR. WILLIAMS: I believe I heard a law enforcement officer or an officer with prior service who professionally knew the Defendant –-
>
> MR. SAWYER: Was it the Defendant –-

MR. WILLIAMS: -- because of -- well, at that point, we hadn't talked about the Staten family. At that point, it was only Jamar. And he said, yes, I was familiar with the Defendant and it had to do -- or something with previous drug charges or case -- or something like that. But it was enough that in my mind I immediately thought, well, the Defendant has got a record and so, in the minds of people, that's going to bias him. Not knowing any of the facts of these current charges, it just seems to me, as I consider myself –-

THE COURT: You're concerned that you were tainted based on what you heard or think you heard?

MR. WILLIAMS: Yes. And I -- I would think that any other normal person would also click on that.

THE COURT: Anything else?

MR. SAWYER: I haven't got anything?

THE COURT: Question?

MR. COOK [defense attorney]: If it turns out that Jamar Staten personally does not have any prior criminal history, would that remedy the situation?

MR. WILLIAMS: Oh, yes, absolutely. I would ask why would the law-enforcement officer state –-

THE COURT: I think what he said was he's familiar with the family of the Defendant. I don't think Mr. Bone has been a law enforcement for, what, 20 years? And this defendant is fairly young, and I don't think he was a law enforcement officer when this young man was alive.

MR. WILLIAMS: Okay. Okay. If -- if –-

THE COURT: I think he's referring to the family with that name.

MR. WILLIAMS: Okay. I just -- it just bothered me, you know, that

–-

-9-

THE COURT: Understood.

MR. WILLIAMS: Because your instructions to the panel is that they're not to talk about this or -- or this and that.

THE COURT: We're sensitive to not let anybody know in a case about prior criminal history of any kind.

MR. WILLIAMS: Yeah. I would -- I would think so, so that was THE

COURT: Is that it?

MR. SAWYER: Thank you, Mr. Williams.

MR. COOK: Thank you for understanding. Thank you.

(Tr. 70-73).

At the end of individual voir dire, defense counsel moved for a mistrial.

(Tr. 83).

> We heard from Juror Number 25, Beau Williams, that he was sitting near Juror Number 47, Clyde Bone, a law enforcement officer -- a retired law enforcement officer, and he said he heard Mr. Bone make disparaging comments about the Defendant, Jamar Staten. He said that the officer made comments about him having a prior drug conviction. And we discussed this with Mr. Williams and -- and, ultimately, nothing came of it, but I think that it -- it shows that it's an adequate record and reflection of the fact that the entire panel was tainted by Clyde Bone's comments. And this is true because nobody else other than Mr. Beau Williams came forward with this remark and reported it.

(Tr. 83). The prosecutor responded that no one else came forward, and it was

inaccurate information (Tr. 84). "It could be as simple as Mr. Williams misheard

or misinterpreted some response that Mr. Bone made" (Tr. 84). The court

-10-

overruled the motion for mistrial, saying "while Mr. Williams may be tainted, I don't see that the panel is." (Tr. 85).

The Missouri Court of Appeals denied this point finding that a reading of Mr. Williams' comments regarding Mr. Bone's statements regarding Mr. Staten supported the trial court's finding that Mr. Williams misheard or misremembered Mr. Bone's statements. *See State v. Staten,* 524 S.W.3d 186, 192 (Mo. Ct. App. 2017). Based on Mr. Bone's statements during voir dire, the court of appeals found nothing prejudicial or inflammatory as to merit the quashing of the entire venire panel. *Id.* Also it found that the record did not support Mr. Staten's argument that Mr. Bone's experience with Mr. Staten and previous drug charges deprived him of his right to a fair trial. *Id.* at 192-193.

Where the state court has adjudicated a constitutional claim on the merits, a Mr. Staten must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Alternatively, a Mr. Staten can demonstrate that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

The appellate court's decision, however, was an unreasonable application of United States Supreme Court precedent. The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to be

-11-

tried by impartial and unbiased jurors. *See Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222, 119 L. Ed.2d 492 (1992). "The primary purpose of the voir dire of jurors is to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel." *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973) (citing Wright, 2 Federal Practice and Procedure, ¶ 382 (1969)); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634, 68 L. Ed.2d 22 (1981) (" Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."); *Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S. Ct. 1899, 1908, 114 L. Ed.2d 493 (1991) (voir dire "serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges").  Without an adequate voir dire, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. *See Connors v. United States*, 158 U.S. 408, 413 (1895).

Given Mr. Bone's statements during voir dire, Mr. Staten could not have received a impartial jury.  Mr. Bone opined that he knew of Mr. Staten from a prior drug case.  Mr. Staten, however, had no prior convictions.  Because he did not testify, this fact did not come out.  Thus, any eventual juror who heard Mr. Bone's comments would not have know that they were false.  Moreover, the comments were too prejudicial for the trial court to ignore and it should have

inquired further into the harm that they caused.  A comment from a former law enforcement member that he knew a defendant through criminal activity would have had an impact on any jury that heard them.   Because the risk of prejudice was too great, the trial court should have granted the mistrial.    Mr. Staten suffered prejudice as he was denied an impartial jury.

Also, the court of appeal's decision was also an unreasonable determination of the facts in the record.  The trial court did not question Mr. Bone as to whether he made such remarks nor did it inquire further of the other veniremembers whether they heard Mr. Bone's remarks.  Instead, both the trial court and appellate court found that Mr.  Williams either misremembered or misheard Mr. Bone's comment. Because neither Mr. Bone nor the other veniremembers were questioned, this factual determination is not borne out by the record and is unreasonable.  The writ must issue.

### B.    *Ineffective Assistance of Trial Counsel*

### 2.    *Mr. Staten  was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to request a change of venue.*

*Supporting facts:* In his amended Rule 29.15 postconviction motion, Mr. Staten alleged that he had received ineffective assistance of counsel in that his trial counsel failed to move for a change of venue.   Mr. Staten alleged that counsel

-13-

should have sought a change of venue due to his family's criminal notoriety in Pettis County and surrounding counties. The motion court held a hearing on the amended motion and Mr. Staten's pretrial and trial counsel testified. In addition, a sixteen-page printout from Case.net listing criminal cases in Pettis and Cooper Counties involving persons with the last name of Staten was admitted as an exhibit.

Pretrial counsel testified that he was aware that the Staten family had been the subject of several criminal cases and he may have discussed with Mr. Staten that the Staten name might have a reputation in Pettis County (PCR Tr. 7-8). He testified that he did not specifically remember whether Mr. Staten asked for a change of venue, but he did not think Mr. Staten did so. (PCR Tr. 8). Pretrial counsel believed that a change of venue was the attorney's decision, but if a client insisted, he would seek one. (PCR Tr. 9). He further testified that he did not seek a change of venue because he considered Pettis County to be a growing, diverse county and thought it was not "a bad place to try a case, necessarily." (PCR Tr. 10).

Trial counsel testified that he did not recall having any discussions with appellant about a change of venue. (PCR Tr. 21). He also testified that he learned that there were other Statens that had been charged with crimes, but he did not realize how many until he read Mr. Staten's amended motion; he never realized it was a vast situation that required attention. (PCR Tr. 21-22). He further

testified that he was guided by pretrial counsel's view of Pettis County as "increasingly cosmopolitan" and "as good a place for a criminal jury trial as anywhere." (PCR Tr. 22).

Mr. Staten testified that he told his attorneys that he needed a change of venue because he could not get a fair trial in Pettis County. (PCR Tr. 76-78). He also testified that he could not get a fair trial in Pettis County because his family and last name have a bad reputation in the county. (PCR Tr. 77).

Subsequently, the motion court denied relief. The motion court found that:

> Mr. Staten specifically claims ineffective assistance of counsel in that pre-trial and trial counsel failed to ask for a change of venue. The Court finds that both lawyers testified as to their strategical reason for not asking for trial in another County. The Court finds that the movant did not ask either of his attorneys for a change of venue. Counsel believed that Pettis Coutn as a more diverse county and thus Mr. Staten would have a better chance of pervailing there than in a more rural county where the case was likely to be transferred. Trial counsel relied on his mentor's knowledge and experience on this point. Counsel also indicated he would have asked for a change of venue if Mr. Staten has asked for it. In making such a decision on venue the Court cannot fine [sic] that the movant's attorneys failed to exercise the customary skill and diligence that a reasonably competent attorney would under the same or similar circumstances. No prejudice has been shown by counsel. The motion is denied on this point.

(PCR L.F., Doc. 8, p.5).

Mr. Staten timely appealed and raised this as his sole issue on appeal. The Missouri Court of Appeals affirmed the denial of postconviction relief as to this claim. In affirming the postconviction court's denial, the court of appeals held that Mr. Staten's claim failed because the motion court disbelieved Mr. Staten and

-15-

that it must defer to the motion court on issues of credibility. *Staten v. State,* No. WD82631, Ord., p. 6 (Mar. 31, 2020). Also, even setting aside the fact that the motion court found that Mr. Staten had not communicated his concerns to counsel, the court of appeals found that his claim still fails because the decision to remain in Pettis County was reasonable trial strategy. *Id.* at 7. Finally, even if the court of appeals found deficient performance, Mr. Staten had not shown that he suffered prejudice. *Id.* at 8.

Where the state court has adjudicated a constitutional claim on the merits, a Mr. Staten must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Alternatively, a Mr. Staten can demonstrate that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

The Missouri Court of Appeal's decision was an unreasonable interpretation of *Strickland v. Washington*, 466 U.S. 668 (1984). It was also an unreasonable determination of the facts. Trial counsel's performance was deficient in failing to seek a change of venue because of Mr. Staten's last name. A reasonably competent attorney would have investigated the fact that Mr. Staten's last name was problematic and would ensure that he did not receive a fair trial. During the postconviction evidentiary hearing, trial counsel acknowledged that he

did not know that Mr. Staten's last name was a "vast situation" that needed addressing. Furthermore, Mr. Staten suffered prejudice because he did not receive an impartial jury. Finally, the state courts' denial of this claim is also an unreasonable determination of the facts because Mr. Staten stated during his sentencing that he asked for a change of venue. (Tr. 411-413).

The writ must issue, and Mr. Staten is entitled to a new trial.

**3.      Mr. Staten  was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to present evidence that Mr. Staten's developmental age was closer to that of a juvenile than an adult and to object to the sentencing judge's refusal to consider Mr. Staten's age at the time of the offense.**

At the time of the offense, Mr. Staten was twenty years old. During the sentencing phase of the trial, defense counsel made no argument to the jury that Mr. Staten's age at the time of the offense mitigated against a long sentence. At sentencing, defense counsel did advocate to the court that Mr. Staten's age was one reason for the court to give him a sentence lower than the jury recommendation. (Tr. 397). Defense counsel presented no additional evidence or argument as to age. After sentencing Mr. Staten, the trial court stated:

> To further ally the argument about your young age, the last time I checked, the average age in the Missouri Department of Corrections was 21 years of age. That's not unusual for someone this young to go to the penitentiary. To suggest that your age is a factor is troubling to

me. At what age is a punishment for a crime inappropriate? Before 18, after 70, to suggest that your age is a valid ground for not punishing would allow others that fit into your age category to commit any felony they wanted with the assurance that they could not, or would not be punished. It should be remembered that the jury considered your age when they determined your appropriate sentence. There's nothing that suggests that you are inferior in mind and body, therefore, you are no different than any other person of any age who stands before a court for sentencing.

(Tr. 408-409).

Reviewing courts must analyze claims of ineffectiveness of trial counsel under the familiar test of *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that counsel's deficient performance prejudiced him. *Id.* at 687-688. The necessary prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Reasonably competent counsel would have presented evidence why Mr. Staten's age was a mitigating factor to the jury and court. Also, reasonable counsel would have objected to the trial court refusing to consider Mr. Staten's age as a mitigating sentencing factor as improper. Furthermore, reasonably competent counsel would have been familiar with the developmental science that

-18-

young adults (people within the 18- to 25-year-old range) have a high rate of antisocial and risky behavior and are far more similar to than different from 16- and 17–year olds. Although the United States Supreme Court drew the line at 18 between childhood and adulthood, it acknowledged it as an imprecise "categorical rule." *Roper v. Simmons*, 543 U.S. 551, 554 (2005).

Other courts have recognized that individuals of Mr. Staten's age at the time of his offense are more similar to juveniles than adults. In *People v. House*, an Illinois Court of Appeals found the United States Supreme Court's designation that after the age of 18 an individual is a mature adult as somewhat arbitrary and recognized research '"in neurobiology and developmental psychology has shown that the brain doesn't finish developing until the mid–20s, far later than was previously thought. Young adults are more similar to adolescents than fully mature adults in important ways. They are more susceptible to peer pressure, less future-oriented and more volatile in emotionally charged settings."' (quoting Vincent Schiraldi & Bruce Western, Why 21 year-old offenders should be tried in family court, Wash. Post (Oct. 2, 2015), www.washingtonpost.com/opinions/time-to-raise-the-juvenile-age-limit/2015/1 0/02/948e317c-6862-11e5–-9ef3-fde182507eac_story.html,"72 N.E.3d 357, 387 (Ill. App. Ct. 2015). Mr. Staten was prejudiced by trial counsel's failure to present evidence that his mental development was closer to a 16 or 17 year old than an adult and objected when the trial court refused to consider Mr. Staten's age. But

-19-

for trial counsel's failure to present such evidence and object to the court's refusal to consider his age, he received a twenty-two year sentence. There is a reasonable probability that if such evidence had been presented, the jury would have recommended a lower sentence and the trial court would have sentenced him to it. In the alternative, even if the jury had still recommended a twenty-two year sentence, there is a reasonable probability that the trial court would have sentenced him to a lower sentence if trial counsel had provided the scientific evidence or objected to the trial court's refusal to consider Mr. Staten's age. *Strickland*, 466 U.S. at 694.

This issue has not been properly raised in state court. Mr. Staten can overcome this default under *Martinez v. Ryan*, 566 U.S. 1 (2012). The failure occurred because of the ineffective assistance of Mr. Staten's post-conviction counsel. Postconviction counsel was ineffective for failing to include this claim in the amended petition filed under Rule 29.15. Also, this issue is deserving of an evidentiary hearing in which trial counsel will testify that he should have presented evidence of Mr. Staten's developmental age to the jury and court and objected to the court's refusal to consider Mr. Staten's age as a mitigating factor.

This Court should issue the writ and vacate Mr. Staten's sentence**.**

## CONCLUSION

For the foregoing reasons, petitioner Jamar Staten prays this Court will grant and issue a writ of habeas corpus in this case directing the respondent to show cause why Mr. Staten should not be released from his unlawful conviction and sentence; to conduct such hearing as may be necessary to determine the issues presented in this petition; and upon hearing, to grant him relief from his conviction and sentence as requested in this petition, and for such other relief in law and equity to which he may show himself justly entitled.

Respectfully submitted,

LAW & SCHRIENER, LLC

*/s/Kevin Schriener*
KEVIN L. SCHRIENER[*], Bar #35490
141 North Meramec Avenue, Suite 314
Clayton, Missouri 63105
(314) 721-7095 – telephone
(314) 863-7096 – facsimile
kschriener@SchrienerLaw.com – e-mail

---

[*]Attorney Schriener's Bar Admission to this Court is pending. His application has been accepted and he has paid the registration fee but is awaiting to be administered the oath which is scheduled for February 5, 2021.

-21-

/s/ Kent E. Gipson
_____

KENT E. GIPSON, Bar #34524
Local Counsel for Petitioner
Law Office of Kent Gipson, LLC
121 East Gregory Boulevard
Kansas City, Missouri 64114
(816) 363-4400 — telephone
(816) 363-4300 — facsimile
kent.gipson@kentgipsonlaw.com e-mail

ATTORNEYS FOR PETITIONER