**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

JAMAR STATEN,            )
                                     )
              Petitioner, )
                                       )
v.                                   )      Case No. 2:21-CV-04020-NKL
                                       )
MICHELE BUCKNER,      )
                                     )
              Respondent. )

## Response to Show Cause Order

### Introduction

Petitioner Jamar Staten is an inmate at the South Central Correctional Center in Licking, Missouri. In 2016, a jury convicted Staten of first-degree assault and armed criminal action. The Pettis County Circuit Court sentenced Staten to concurrent sentences of twenty-two years' imprisonment for assault and twenty years' imprisonment for armed criminal action. Respondent Michele Buckner is the Warden of South Central Correctional Center and supervises Staten's custody while he serves his sentences.

In his petition, Staten raises three grounds for habeas relief. Grounds 1 and 2 advance arguments that Staten raised in state court, and this Court should deny them in deference to the decisions of the Missouri Court of Appeals on those claims. 28 U.S.C. § 2254(d). The Court should deny Ground 3 as

1

procedurally defaulted because Staten failed to raise it during state post-conviction proceedings. *Coleman v. Thompson,* 501 U.S. 722, 730–31 (1991).

## Statement of Exhibits

1. Respondent's Exhibit A is the transcript of Staten's underlying criminal trial and sentencing.

2. Respondent's Exhibit B is the legal file from Staten's direct appeal.

3. Respondent's Exhibit C is Staten's brief on direct appeal.

4. Respondent's Exhibit D is the State's brief on direct appeal.

5. Respondent's Exhibit E is the Missouri Court of Appeals's opinion affirming Staten's convictions and sentences on direct appeal.

6. Respondent's Exhibit F is the transcript of the evidentiary hearing held on Staten's motion for post-conviction relief.

7. Respondent's Exhibit G is the legal file from Staten's post-conviction appeal.

8. Respondent's Exhibit H is Staten's brief on post-conviction appeal.

9. Respondent's Exhibit I is the State's brief on post-conviction appeal.

10. Respondent's Exhibit J is the Missouri Court of Appeals's unpublished memorandum decision affirming the denial of post-conviction relief.

# Statement of Facts

On federal habeas review, this Court is limited to the evidentiary record presented in state court. 28 U.S.C. § 2254(e); *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). This Court must presume that facts found by the state courts are correct unless Staten rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). On direct appeal and during post-conviction proceedings, the Missouri Court of Appeals recited factual findings relevant to Staten's claims:

## *Evidence at Trial*

Staten was indicted on September 16, 2015 for one count of assault in the first degree and one count of armed criminal action. At trial, the evidence was that Staten and his brother Rodney Jackson ("Jackson") went to a party attended by Jackson's girlfriend Crystal Coke ("Coke") on or about August 2, 2015. Coke refused to leave the party and had an argument with Jackson. The hosts of the party, Alex and Shandi Kosgei, requested that Jackson and Staten leave. The two men left the party but returned shortly thereafter. A confrontation ensued between Alex Kosgei ("Alex"), Coke, Staten, and Jackson that resulted in the stabbing of Alex. Alex testified that Staten lunged toward him and stabbed him in the stomach. Two additional witnesses testified that they saw Staten lunge toward Alex, which was followed by Alex dropping to the ground with a stab wound.

(Resp. Ex. E at 2).

## *Jury Selection Claim*

Prior to trial during voir dire, the prosecutor asked the venire panel whether anyone had prior dealings with himself or defense counsel. Veniremember #47 responded as follows:

[VENIREMEMBER #47]: I am a retired State Trooper for the State of Missouri, and I've had dealings with the Defendant's family down through the years.

[PROSECUTOR]: Okay.

[VENIREMEMBER #47]: And I've worked hand in hand with the prosecutor's office.

[PROSECUTOR]: Okay. Are those prior dealings, do you think, would lead you to be incapable of being fair and impartial here today?

[VENIREMEMBER #47]: Not necessarily, but I've got to be honest with you and tell you I think it has influenced me somewhat.

Later, when asked by defense counsel whether anyone on the panel knew Staten's family, Veniremember #47 responded that he "[knew] them professionally, the family for the past 20 years."

Following the public examination of the venire panel, the court addressed private answers from persons on the panel out of the hearing of the rest of the panel. Of relevance here, Veniremember #25 had the following exchange with the trial court and counsel:

THE COURT: Next, Number 25. That's

[Veniremember #25]. You wish to respond further?

[VENIREMEMBER #25]: Yes. I believe -- I'm not -- I'm not sure, but there was an officer behind me, I believe it was [Veniremember #47].

THE COURT: Uh-huh.

[VENIREMEMBER #25]: And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges.

4

THE COURT: Uh-huh.

[VENIREMEMBER #25]: I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases. It seems to me, not having ever served on a jury before, that that would bias the jury and I -- I just asked for point of law on that.

THE COURT: Questions?

[PROSECUTOR]: So that I know that I'm clear, because, obviously, I know what his history is and what it is not. You believe you heard something that you think was directed towards the Defendant?

[VENIREMEMBER #25]: I believe I heard a law enforcement officer or an officer with prior service who professionally knew the Defendant –-

[PROSECUTOR]: Was it the Defendant –-

[VENIREMEMBER #25]: -- because of -- well, at that point, we hadn't talked about the Staten family. At that point, it was only Jamar. And he said, yes, I was familiar with the Defendant and it had to do -- or something with previous drug charges or case -- or something like that. But it was enough that in my mind I immediately thought, well, the Defendant has got a record and so, in the minds of people, that's going to bias him. Not knowing any of the facts of these current charges, it just seems to me, as I consider myself – -

THE COURT: You're concerned that you were tainted based on what you heard or think you heard?

[VENIREMEMBER #25]: Yes. And I -- I would think that any other normal person would also click on that.

THE COURT: Anything else?

5

[PROSECUTOR]: I haven't got anything?

THE COURT: Question?

[DEFENSE COUNSEL]: If it turns out that Jamar Staten personally does not have any prior criminal history, would that remedy the situation?

[VENIREMEMBER #25]: Oh, yes, absolutely. I would ask why would the law-enforcement officer state —-

THE COURT: I think what he said was he's familiar with the family of the Defendant. I don't think [Veniremember #47] has been a law enforcement for, what, 20 years? And this defendant is fairly young, and I don't think he was a law enforcement officer when this young man was alive.

[VENIREMEMBER #25]: Okay. Okay. If -- if —-

THE COURT: I think he's referring to the family with that name.

[VENIREMEMBER #25]: Okay. I just -- it just bothered me, you know, that —-

THE COURT: Understood.

[VENIREMEMBER #25]: Because your instructions to the panel is that they're not to talk about this or -- or this and that.

THE COURT: We're sensitive to not let anybody know in a case about prior criminal history of any kind.

[VENIREMEMBER #25]: Yeah. I would -- I would think so, so that was —- THE COURT: Is that it?

[PROSECUTOR]: Thank you, [Veniremember #25].

[DEFENSE COUNSEL]: Thank you for understanding. Thank you.

[VENIREMEMBER #25]: Thank you. I appreciate it.

No other veniremember came forward with any information or concerns regarding comments from Veniremember #47.

Defense counsel moved for a mistrial, arguing the entire panel was tainted because Veniremember #25 had allegedly heard Veniremember #47 make disparaging comments about Staten and past drug charges. Defense counsel inferred that other members of the panel likely heard these comments as well, even though no other member came forward to report having heard such statements. The State argued that Veniremember #25 may have misheard or misinterpreted some response that Veniremember #47 had made regarding his law enforcement experience and that there was no indication that the entire panel was tainted except for Veniremember #25. The trial court found that it believed Veniremember #25 had misheard Veniremember #47's answers to venire questions and denied the motion. Neither Veniremember #47 nor Veniremember #25 served on the jury that heard evidence in this matter. Staten raised this claim of error in his motion for a new trial, which was denied by the trial court.

(Resp. Ex. E at 2–5).

### *Ineffective Assistance of Counsel Claim – Change of Venue*

Staten timely filed a pro se motion for post-conviction relief. Post-conviction counsel filed an amended motion, alleging, inter alia, that Staten's pre-trial and trial counsel were ineffective for failing to file a request for a change of venue. In support of this claim, Staten argued that his family had a negative reputation in Pettis County and that this reputation precluded him from receiving a fair trial in that jurisdiction.

An evidentiary hearing was held, at which pre-trial counsel, trial counsel, and Staten testified.

Pre-trial counsel testified that he had been a public defender for approximately thirteen years and had lived in Pettis County for about sixteen years at the time he represented Staten. While

he was aware that members of the Staten family had been involved in criminal cases, he did not know the specifics of those cases. Pre-trial counsel indicated that he discussed a change of venue and change of judge with Staten but did not recall Staten requesting that he seek a change of venue. He further explained that "generally speaking, if a client is really insistent on it, I will do it. That being said, it is not – I don't believe it is the client's choice. I believe that that is a trial strategy decision." Pre-trial counsel noted that Pettis County was larger and more diverse than many of its surrounding counties and that he did not "think it's a bad place to try a case, necessarily."

Trial counsel testified that he took over Staten's case when pre-trial counsel left the public defender's office. He stated that he did not recall having a conversation with Staten related to requesting a change of venue. Trial counsel explained that he was not generally aware of Staten's family history with the Pettis County criminal justice system until he read Staten's post-conviction motion. He stated that he was "vaguely aware that maybe his brother had been involved in something. And then there was a big crime that somebody told me maybe his father was involved in something." During the evidentiary hearing, trial counsel was shown a sixteen page printout from Casenet listing criminal cases from Pettis and Cooper Counties involving members of the Staten family. Nevertheless, trial counsel maintained that he would not have filed for a change of venue even if he had known the extent of the family's criminal history because "I'm still following [pre-trial counsel's] rule that – that Pettis County is a growing progressive county with a diverse population, and it's just as fine a place to have a trial as anywhere else."

Trial counsel further noted that he did not believe any member of Staten's jury had a "predisposition or knowledge of the Staten name[.]" The venire was specifically asked during voir dire whether anyone knew Staten or had familiarity with his family. Only four members of the venire indicated they knew people with the last name Staten and none of those individuals served on the jury.

Staten testified that he had conversations with pre-trial and trial counsel about seeking a change of venue because "I wasn't

going to have a fair trial in Pettis County. A lot of people know my family and my last name[.]" However, Staten admitted that his father had been found guilty by a Cooper County jury after the case had been transferred from Pettis County, and the prosecutor noted that another Staten had been acquitted following a trial in Pettis County.

The motion court denied Staten's motion for post-conviction relief, finding that neither of Staten's counsels were ineffective:

> The Court finds that both lawyers testified as to their strategical reason for not asking for trial in another County. The Court finds that the movant did not ask either of his attorneys for a change of venue. Counsel believed that Pettis County was a more diverse county and thus Mr. Staten would have a better chance of prevailing there than in a more rural county where the case was likely to be transferred. Trial counsel relied on his mentor's knowledge and experience on this point. Counsel also indicated he would have asked for a change of venue if Mr. Staten had asked for it.

The motion court additionally found that Staten had failed to establish he was prejudiced by the failure to seek a change of venue.

(Resp. Ex. F at 2–4).

## Argument

## I.     The Court should deny Grounds 1 and 2 under 28 U.S.C. § 2254(d).

### A.     Applicable legal standards under AEDPA

In Grounds 1 and 2, Staten presents claims that he previously raised in state court that the Missouri Court of Appeals denied during his direct appeal and post-conviction appeal. In deference to the state-court decisions, this Court must deny Grounds 1 and 2 unless the state-court decisions on those claims

contradicted or unreasonably applied clearly established federal law or rested on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

In reviewing whether a state court's application of federal law was unreasonable, federal courts review the legal conclusion reached by the court, not merely its rationale. *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012). Where there is no conspicuous misapplication of on-point Supreme Court precedent, the proper question is whether there is "any reasonable argument" that the state court's judgment is consistent with federal law. Id. "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

In addition, a state court's application of federal law is not unreasonable simply because it is incorrect. *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**B.    Analysis**

**1.    The trial court did not err in denying Staten's motion for a mistrial during voir dire (responds to Ground 1).**

In his first ground for relief, Staten argues that the trial court should have granted a mistrial because the jury panel was tainted by the comments of Veniremember #47. Staten raised the same claim on direct appeal, and the Missouri Court of Appeals found that his claim was not supported by the record on appeal. (Resp. Ex. E at 6–9). The Court should deny the claim in deference to the state-court decision under 28 U.S.C. § 2254(d).

The key flaw in Staten's claim is that it relies on alleged statements made by Veniremember #47 that are not supported by the record and which the trial court found were never made. During voir dire, Veniremember #25 had a colloquy with the court and parties away from the jury and said that he believed Veniremember #47, a law enforcement officer, had made comments that he knew Staten and his family from a previous drug case. After examining Veniremember #25, the trial court concluded that Veniremember #25 misheard, misinterpreted, or misremembered Veniremember #47's comments during voir dire, and an examination of those comments shows that Veniremember #47 did not say anything about Staten's prior criminal history or make otherwise prejudicial comments.

The trial court's finding is strongly supported by the record. Veniremember #25's report of Veniremember #47's comments is "prefaced with language of uncertainty" ("I believe-- I'm not -- I'm not sure...." "I'm not sure," and "I believe that's what I heard") and Veniremember #25 never stated or implied that the comments were made outside the public questioning of the voir dire panel. (Resp. Ex. E at 8–9). Further, Staten had no prior convictions— drug related or otherwise, and no other veniremember reported hearing the comments as Veniremember #25 heard them. (Resp. Ex. E at 8–9). Based on this evidence, the Missouri Court of Appeals agreed with the trial court's finding that Veniremember #25 misheard or misremembered Veniremember #47's comments and that Veniremember #47 did not make extraneous statements outside of voir dire.

This Court is bound by the facts found in state court unless Staten rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e). Staten offers no evidence that could overcome the state-court finding about Veniremember #47's comments. The trial court was in the best position to weigh the evidence and judge the credibility of the veniremembers it observed, and this Court has "no license" to redetermine those credibility findings in a federal habeas action. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).

Staten complains that the trial court failed to inquire further of other veniremembers, but his complaints are unfounded. Staten had the burden to

plead and prove claims of error in state court, and he did not ask the Court to inquire further of any other veniremembers on the issue or gather any additional evidence to support his claim. (Resp. Ex. A at 83–84). This Court is now bound to decide the claim on the state-court record. 28 U.S.C. § 2254(e); *Cullen*, 563 U.S. at 181–82.

On the state-court record, Staten's claim fails. Staten's core contention is based on prejudice from Veniremember #47's alleged statement that "he knew of Mr. Staten from a prior drug case," but that argument is not supported by the record. (Pet. at 12). Veniremember #47's on-the-record statements were that he "had dealings with the Defendant's family down through the years" and that experience had "influenced [him] somewhat." (Resp. Ex. A at 23). Staten does not argue that Veniremember #47's recorded statements justified a mistrial, nor could he. As the state court found, Veniremember #47's generic statement regarding his law enforcement experience and dealings with Staten's family were not so prejudicial or inflammatory as to merit quashing the entire venire panel. (Resp. Ex. E at 9).

Staten cites no clearly established federal law that would require a different result, and Eighth Circuit precedent supports the state court's holding. *United States v. Bolden,* 545 F.3d 609, 620 (8th Cir. 2008). In *Bolden,* the Eighth Circuit held that an ambiguous statement about the veniremember's connection to the case did not require the trial court to quash

the district court panel. *Id.* So too here. Veniremember #47's comments did not reveal any inflammatory or biased views toward the defendant or his family. The Missouri Court of Appeals's decision on this claim is reasonable and entitled to deference. 28 U.S.C. § 2254(d). The Court should deny Ground 1.

## 2. Trial counsel was not ineffective for failing to seek a change of venue (responds to Ground 2).

In his second ground for relief, Staten argues that his trial counsel was ineffective for failing to file a motion for change of venue. Staten argues that his family had a reputation for criminal activity in Pettis County that prevented him from receiving a fair trial. (Pet. at 13–14).

To demonstrate ineffective assistance of counsel, a petitioner must show both that: 1) his counsel's performance was objectively unreasonable, and 2) he was prejudiced as a result of his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

To show deficient performance, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Because of the "distorting effects of hindsight," this Court's highly deferential scrutiny of counsel's performance "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To show prejudice, petitioners must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In reviewing claims of ineffective assistance of counsel rejected by state courts on the merits, habeas review is "doubly" deferential on the issue of counsel's competence. *Harrington v. Richter,* 562 U.S. 86, 105 (2011). As the standard for competence under *Strickland* is a general standard, "the range of reasonable application is substantial." *Id.*

The Court should deny Ground 2 because the record shows that trial counsel considered filing for change of venue, but decided not to as a matter of strategy. (Resp. Ex. J at 6–7). In addition, the record shows Staten was not prejudiced because the venire panel was questioned about their familiarity with Staten's family, and the few jurors who knew a Staten did not serve on the jury. (Resp. Ex. J at 8).

Both Staten's pretrial and trial counsel testified that they believed that a change of venue would not benefit Staten because Pettis County was a growing and diverse county that provided a favorable location to defend a criminal case. (Resp. Ex. J at 7); (Resp. Ex. F at 10, 22). This view was supported by counsels' concern that a change of venue would result in a transfer to one of the smaller, less favorable surrounding counties. (Resp. Ex.

J at 7). Staten's pretrial counsel was a long-time resident of Pettis County with extensive criminal defense experience which made him "particularly well-positioned to analyze" whether to seek to change venue. (Resp. Ex. J at 7). The record shows that Staten's attorneys decided not to seek a change of venue after careful and informed consideration of the issue. That strategic decision is "virtually unchallengeable." *Strickland,* 466 U.S. at 690.

Staten testified that he asked his attorneys to file for change of venue, but the motion court found that testimony was not credible and the Court is bound by that determination. (Resp. Ex. J at 6); *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).

Staten has also failed to show he was prejudiced by counsel's decision. The venire panel was asked whether they were familiar with Staten and his family. "None of the four veniremembers who responded served on the jury and the record is barren of evidence that any juror in the case was familiar with the Staten family or its alleged reputation in Pettis County." (Resp. Ex. J at 8).

The Missouri Court of Appeals reasonably applied *Strickland* in denying Staten's claim that counsel was ineffective. The Court should deny Ground 2 under 28 U.S.C. § 2254(d).

## II. The Court should deny Ground 3 as procedurally defaulted (responds to Ground 3).

In Ground 3, Staten raises a ground for relief that he failed to present in state court. Federal law requires that the Court dismiss this claim because Staten's failure to present them according to state procedural rules is an independent and adequate state law reason to deny them. *Franklin v. Hawley,* 879 F.3d 307, 311 (2018) (citing *Coleman,* 501 U.S. at 750). Even if Ground 3 were preserved for federal habeas review, the Court should still deny it on its merits.

### A. Procedural Default

State courts are entitled to the first opportunity to address and correct alleged violations of the prisoner's federal rights. *Coleman,* 501 U.S. at 731 (citing *Rose v. Lundy,* 455 U.S. 509 (1991)). To preserve issues for federal habeas review, a prisoner must fairly present his claims to state courts during direct appeal or state post-conviction proceedings. *Sweet v. Delo,* 125 F.3d 1144, 1149 (8th Cir. 1997). Where the petitioner fails to present his claims in state court, he "'forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards.'" *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (quoting *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004)).

Staten failed to raise Ground 3 during state post-conviction proceedings. Ground 3 argues that trial counsel was ineffective for failing to present additional evidence and argument about Staten's young age during sentencing. (Pet. at 17). Missouri's Supreme Court Rule 29.15 provides the "exclusive procedure" for inmates to litigate ineffective-assistance-of-counsel claims. Mo. Sup. Ct. R. 29.15(a). Staten waived Ground 3 by failing to include it in his amended Rule 29.15 motion for post-conviction relief. (Resp. Ex. G at 20–33).

Staten argues that the Court can excuse the procedural default under *Martinez v. Ryan,* 132 S. Ct. 1309 (2012). In *Coleman v. Thompson,* the Supreme Court established a rule that "ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse factual or procedural default." *Wooten v. Norris,* 578 F.3d 767, 778 (8th Cir. 2009); *see Coleman,* 501 U.S. at 752; *Edwards v. Carpenter,* 529 U.S. 446, 450–53 (2000). The *Martinez* Court announced a "narrow exception" to the *Coleman* rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez,* 132 S. Ct. at 1320.

Because Missouri requires ineffective-assistance-of-counsel claims to be raised in an initial-review collateral proceeding, Staten can only demonstrate

"cause" under *Martinez* if he demonstrates that (1) post-conviction counsel was "ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 132 S. Ct. at 1318.

Staten fails to allege any facts that could show that post-conviction counsel was ineffective. Instead, Staten presents the bare conclusion that post-conviction counsel was ineffective for failing to raise Ground 3 during state proceedings. That is not sufficient to grant review of Staten's defaulted claims. Counsel need not, and should not, raise every non-frivolous claim. *Smith v. Robbins,* 528 U.S. 259, 288 (2000). Rather, counsel should select from among potential issues in order to maximize the likelihood of success. *Id.* "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance be overcome." *Id.* (citations omitted).

In the amended post-conviction motion, post-conviction counsel raised seven grounds for relief, each supported by specific factual allegations and references to the record. (Resp. Ex. G at 21). Counsel's conduct in selecting the claims and drafting the motion is presumed to be effective conduct, and Staten pleads no facts that could overcome that presumption. *Strickland,* 466 U.S. at 690. There is no basis to conclude that post-conviction counsel was ineffective, so the Court should deny Ground 3 as procedurally defaulted.

Additionally, the claim contained in Ground 3 is not "substantial," so it does not warrant review under *Martinez*. The claim is meritless as discussed below.

**B.    Analysis**

**1.    In the alternative, trial counsel was not ineffective for failing to present additional evidence and argument about Staten's young age at sentencing (responds to Ground 3).**

In his third ground for relief, Staten argues that trial counsel should have presented additional evidence about Staten's developmental age, and objected when the sentencing judge did not favorably consider Staten's age during sentencing. (Pet. at 17).

Staten has failed to show that counsel acted unreasonably or that he was prejudiced. As Staten admits, counsel did present evidence of Staten's young age and argue that the jury and the trial court should consider his young age and give him a lower sentence. (Pet. at 17); (Resp. Ex. A at 345–46, 370, 388, 397); (Resp. Ex. B at 60–61). Still, Staten argues that his counsel should have presented additional sociological evidence about Staten's developmental age and attempted to persuade the Court to treat him more like a juvenile offender.

As a matter of federal law, Staten was not entitled to any special sentencing consideration due to his age. In fact, the Supreme Court has warned courts not to expand its juvenile-offender Eighth Amendment precedent based on social-science reasoning. *Roper v. Simmons,* 543 U.S. 551, 574 (2005); *Miller*

*v. Alabama,* 567 U.S. 460, 540–541; *Graham,* 560 U.S. 48, 78 (2010). In *Roper*, the Supreme Court noted that social sciences suggest that "the qualities that distinguish juveniles from adults do not disappear when an individual turns 18," but found that kind of evidence did not justify special treatment of young offenders beyond the bright-line holding that juvenile offenders cannot be sentenced to death. *Roper,* 543 U.S. at 574. In *Miller* and *Graham*, the Supreme Court issued similar bright-line holdings invalidating certain criminal sentences for offenders who were under 18. Federal courts have overwhelmingly declined to extend *Roper, Miller* and *Graham* to older offenders despite social-science evidence. *United States v. Dock,* 541 F.App'x. 242, 245 (4th Cir. 2013); *Doyle v. Stephens,* 535 Fed. App'x 391, 395 (5th Cir. 2013); *United States v. Marshall,* 736 F.3d 492, 500 (6th Cir. 2013); *Melton v. Fla. Dep't. of Corr.*, 778 F.3d 1234, 1235, 1237 (11th Cir. 2015).

Staten presents no evidence or argument that reasonable attorneys must present social science evidence about a defendant's developmental age where the defendant is older than 18. Here, counsel argued about Staten's age to encourage the court to show mercy; his argument did not need to be technical or scientific.

Even if counsel had presented additional evidence to the sentencing judge, there is no reasonable probability that the sentence would have been different. In sentencing Staten, the Court merely followed the jury's sentencing

recommendation. The Court noted that "[I]n 35 years of being a trial judge" the Court had only disagreed with a jury's verdict on one occasion and never in a criminal case. (Resp. Ex. A at 407). Given the jury's recommendation and the Court's strong inclination to follow it, there is no reasonable probability that additional evidence would have changed the outcome.

## Conclusion

For these reasons, the Court should deny the petition for a writ of habeas corpus.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

*/s/ Andrew J. Crane*

Andrew J. Crane
Assistant Attorney General
Missouri Bar #68017

PO Box 899
Jefferson City, MO 65102
(573) 751-0264
(573) 751-2096 Fax
andrew.crane@ago.mo.gov Email

Attorneys for Respondent

**CERTIFICATE OF SERVICE**
I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system and thereby served to counsel for Petitioner this 12 day of April, 2021.

*/s/Andrew J. Crane*

Andrew J. Crane
Assistant Attorney General