# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JAMAR STATEN, | ) |
|                Petitioner, | ) |
| v. | ) Case No. 2:21-04020-NKL |
| MICHELLE BUCKNER, | ) |
| Warden South Central Correctional Center, | ) |
|                Respondent. | ) |

**ORDER**

Jamar Staten petitions the Court for writ of habeas corpus by a person in state custody. Doc. 1. For the reasons discussed below. The petition is denied.

## I. Background

On August 2, 2015, Staten attended a party. A confrontation between Staten, his brother, and the party host ensued, and the party host was stabbed. At trial, the host testified that Staten lunged toward him and stabbed him in the stomach. Two additional witnesses testified that they saw Staten lunge toward the host, and then the host fell to the ground with a stab wound. *State v. Staten*, 524 S.W.3d 186, 188 (Mo. App. W.D. 2017).

The jury trial concluded on June 1, 2016. Staten was convicted of one count of assault in the first degree and one count of armed criminal action. The jury recommended 22 years for assault and 20 years for armed criminal action. The Court followed the jury's recommendation and ran the sentences concurrently for an aggregate sentence of 22 years imprisonment.

### a. The Voir Dire

During voir dire, the prosecutor asked the venire panel whether anyone had prior dealings with himself or defense counsel. Veniremember #47 responded as follows:

> [VENIREMEMBER #47]: I am a retired State Trooper for the State of Missouri, and I've had dealings with the Defendant's family down through the years.
>
> [PROSECUTOR]: Okay.
>
> [VENIREMEMBER #47]: And I've worked hand in hand with the prosecutor's office.
>
> [PROSECUTOR]: Okay. Are those prior dealings, do you think, would lead you to be incapable of being fair and impartial here today?
>
> [VENIREMEMBER #47]: Not necessarily, but I've got to be honest with you and tell you I think it has influenced me somewhat.

Later, when asked by defense counsel whether anyone on the panel knew Staten's family, Veniremember #47 responded that he "[knew] them professionally, the family for the past 20 years." Doc. 7-1, p. 65. The court then addressed private answers from veniremembers outside the hearing of the rest of the panel. Veniremember #25 had the following exchange with the court and counsel:

> [VENIREMEMBER #25]: I believe—I'm not—I'm not sure, but there was an officer behind me, I believe it was [Veniremember #47].
>
> [THE COURT]: Uh-huh.
>
> [VENIREMEMBER #25]: And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges.
>
> [THE COURT]: Uh-huh.
>
> [VENIREMEMBER #25]: I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases. It seems to me, not having ever served on a jury before, that that would bias the jury and I—I just asked for point of law on that.
>
> [THE COURT]: Questions?

2

[PROSECUTOR]: So that I know that I'm clear, because, obviously, I know what his history is and what it is not. You believe you heard something that you think was directed towards the Defendant?

[VENIREMEMBER #25]: I believe I heard a law enforcement officer or an officer with prior service who professional knew the Defendant—

[PROSECUTOR]: Was it the Defendant—

[VENIREMEMBER #25:] —because of—well, at that point, we hadn't talked about the Staten family. At that point, it was only Jamar. And he said, yes, I was familiar with the Defendant and it had to do—or something with previous drug charges or case—or something like that. But it was enough that in my mind I immediately thought, well, the Defendant has got a record and so, in the minds of people, that's going to bias him. Not knowing any of the facts of these current charges, it just seems to me, as I consider myself—

[THE COURT]: You're concerned that you were tainted based on what you heard or think you heard?

[VENIREMEMBER #25]: Yes. And I—I would think that any other normal person would also click on that.

[THE COURT]: Anything else?

[PROSECUTOR]: I haven't got anything?

[THE COURT]: Question?

[DEFENSE COUNSEL]: If it turns out that Jamar Staten personally does not have any prior criminal history, would that remedy the situation?

[VENIREMEMBER #25]: Oh, yes, absolutely. I would ask why would the law-enforcement officer state—

[THE COURT]: I think what he said was he's familiar with the family of the Defendant. I don't think [Veniremember #47] has been a law enforcement for, what, 20 years? And this defendant is fairly young, and I don't think he was a law enforcement officer when this young man was alive.

[VENIREMEMBER #25]: Okay. Okay. If—if—

3

[THE COURT]: I think he's referring to the family with that name.

[VENIREMEMBER #25]: Okay. I just—it bothered me, you know, that—

[THE COURT]: Understood.

[VENIREMEMBER #25]: Because your instructions to the panel is that they're not to talk about this or—or this and that.

[THE COURT]: We're sensitive to not let anybody know in a case about prior criminal history of any kind.

[VENIREMEMBER #25]: Yeah. I would—I would think so, so that was—

[THE COURT]: Is that it?

[PROSECUTOR]: Thank you, [Veniremember #25].

[DEFENSE COUNSEL]: Thank you for understanding. Thank you.

[VENIREMEMBER #25]: Thank you. I appreciate it.

After this interaction took place, trial counsel moved for a mistrial. Trial counsel stated:

> [VENIREMEMBER #25] said that the officer made comments about him having a prior drug conviction. And we discussed this with [VENIREMEMBER #25] and – and, ultimately, nothing came of it, but I think that it – it shows that it's an adequate record and reflection of the fact that the entire panel was tainted by [VENIREMEMBER #47]'s comments. And this is true because nobody else other than [VENIREMEMBER #25] came forward with this remark and reported it. So, I think this is a motion for mistrial based on the entire panel being tainted, and nothing wrong with [VENIREMEMBER #25], but the entire panel, and he did us a big favor by full[y] and accurately reporting what he heard. I think that [VENIREMEMBER #47] was trying to be heavy-handed and trying to affect this panel adversely.

The trial court denied Staten's motion for mistrial, stating, "I'm going to disagree with you. I think [VENIREMEMBER #25] heard the answer wrong. He wasn't talking about the Defendant, he was talking about the involvement of [VENIREMEMBER #47] when he was a Highway

4

Patrolman and that he had knowledge of the Staten family, not Mr. – not the Defendant. While [VENIREMEMBER #25] may be tainted, I don't see that the panel is." Neither VENIREMEMBER #25 nor VENIREMEMBER #47 was seated on the jury.

    b. **Appeals**

On July 14, 2016, Staten filed a notice of appeal of his convictions. He raised one point of trial court error: that the trial court erred in overruling his motion for a mistrial during voir dire because the jury selection process violated his due process right to a fair trial, a fair and impartial jury, and his right to be tried only for the crimes charged. Staten argued that the entire venire panel was tainted by a venire member's comments that Staten and his family had been involved in drugs. On July 18, 2017, the Missouri Court of Appeals, Western District affirmed Staten's convictions. *Staten*, 524 S.W. 3d at 186. Staten did not seek post-opinion relief and the mandate issued on August 9, 2017.

On October 18, 2017, Staten timely filed a pro se motion for post-conviction relief. *Staten v. State*, No. 17PT-CC00300 (18th Judicial Circuit). The court appointed counsel to represent Staten, and an evidentiary hearing was held. The motion court denied relief on February 6, 2019. On March 7, Staten filed a notice of appeal. The Missouri Court of Appeals, Western District, affirmed the motion court's denial of postconviction relief on March 31, 2020. *Staten v. State*, No. WD82631 (Mo. App. W.D. 2020). Staten did not seek post-opinion relief and the mandate issued on April 22, 2020.[1]

**II.**     **Standard for Habeas Relief**

Under 28 U.S.C. § 2254, a federal court cannot grant habeas relief on a claim adjudicated on the merits in state court "unless the adjudication of the claim—

---

[1] There is no dispute as to the timeliness of Staten's pending petition.

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). A state court decision is "'contrary to' clearly established federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on materially indistinguishable facts. *White v. Dingle*, 757 F.3d 750, 754 (8th Cir. 2014). A decision is an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Ali v. Roy*, 950 F.3d 572, 574 (8th Cir. 2020). To obtain relief under § 2254, the petitioner must demonstrate that the challenged state court ruling rested on an error well understood and "comprehended in existing law beyond any possibility for fairminded disagreement." *Fenstermaker v. Halvorson*, 920 F.3d 536, 540 (8th Cir. 2019).

"[A] determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If the applicant fails to develop the factual basis of a claim in State court proceedings, the Court shall not hold an evidentiary hearing on the claim unless the applicant shows that the claim relies on a new rule of constitutional law that was previously unavailable or a factual predicate that could not have been previously discovered through the exercise of due diligence. *Id.* § 2254(e)(2)(A). A federal court is bound "to exercise only limited and deferential review of underlying State court decisions." *Lumholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003); *Ali*, 950 F.3d at 574 (explaining that federal court's review of state court rulings "is highly deferential") (quotation marks and citation omitted).

### III. Discussion

Staten raises three grounds for relief: one for trial court error and two for ineffective assistance of counsel. Doc. 1. The Court addresses each in turn.

#### a. Trial Court Error

Staten's first ground for relief is that the trial court erred in denying his motion for a mistrial during voir dire. Doc. 1, p. 7. Staten argues that the "voir dire panel was tainted because one of the panelist[s], retired Missouri State Highway Patrol trooper [Veniremember #47], told nearby sitting venire members that Mr. Staten and his family had been involved in drugs." Doc. 1, p. 7.

The appellate court affirmed the trial court's denial of the motion for mistrial. *Staten*, 524 S.W.3d at 186. The appellate court stated, "[w]e agree with the trial court's factual conclusion that it is likely that Veniremember #25 simply misheard, misinterpreted or misremembered Veniremember #47's answers during the questioning of the venire panel . . . ." *Id.* at 192. The appellate court concluded that "Veniremember #47's statements [as] reflected in the court's transcript" were "not so prejudicial or inflammatory as to require striking the entire panel" under Missouri law. *Id*.

Staten argues that the court of appeal's decision was an unreasonable determination of the facts. Doc. 1, p. 13. He maintains that VENIREMEMBER #47, a retired State Trooper, "opined that he knew of Mr. Staten from a prior drug case." Staten contends that, because the retired trooper was not questioned about his statements, the finding that VENIREMEMBER #25 misremembered or misheard the statements was unreasonable.

However, there is no clear and convincing evidence in the record supporting Staten's contention. VENIREMEMBER # 25's statements that the retired trooper who purportedly made the comments at issue was "behind" him and that it seemed "*the panel* knows the Defendant has

priors" (emphasis added) suggest that VENIREMEMBER #25 was referring to the retired officer's statements on the record during voir dire. *See* Doc. 7-1 (Trial Transcript), Tr. at 70:21- p.72:5 ("[VENIREMEMBER #25]: I believe—I'm not—I'm not sure, but there was an officer behind me, I believe it was [VENIREMEMBER #47]. . . . And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges. . . . I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases."). Nothing in VENIREMEMBER #25's comments suggest that the retired trooper made any comments about Staten or his family outside of the formal voir dire process, as Staten now argues. It therefore was not unreasonable for the trial court and appellate court to conclude that the record contained the entirety of the comments by the retired trooper that VENIREMEMBER #25 thought he had heard.

The record does not reflect the former officer making any comments concerning drug-related violations with respect to Staten's family. Rather, the retired trooper stated before the jury pool on the record only that he had "had dealings with the Defendant's family down through the years" and that he knew Staten's family "professionally . . . for the past 20 years." The trial court's conclusion that VENIREMEMBER #25 "heard the [retired trooper's] answer wrong" thus is consistent with the evidence in the record. Staten has not met his burden of establishing with clear and convincing evidence that the trial court erred in finding that VENIREMEMBER #25 misheard or misunderstood the retired trooper's comments.

Even if Staten were correct that the retired trooper suggested that he knew Staten from a prior drug case, that would not warrant a different result. The Eighth Circuit has expressly held that "there is no bright-line rule that a court must dismiss the entire venire panel whenever a venireperson alludes to having outside knowledge of a defendant's criminal activity." *United*

*States v. Pendleton*, 832 F.3d 934, 945 (8th Cir. 2016). In *Pendleton*, the Eighth Circuit held that "fail[ure] to declare a mistrial after one venireperson said that she was familiar with the Pendleton family and their distribution of methamphetamine" did not constitute an abuse of discretion. As that decision issued in a direct appeal from a federal conviction, the standard of review was not so deferential as it is in this habeas case.

Other courts within the Eighth Circuit also have held that comments akin to those that Staten alleges the retired trooper made were not sufficient to warrant a mistrial. *See Riley v. Sachse*, No. 15-CV-00459-NCC, 2018 WL 731831, at *5 (E.D. Mo. Feb. 6, 2018) (concluding on habeas review that a mistrial was not warranted despite the fact that two jurors indicated that, based on their knowledge of the defendant and his family, they expected to find him guilty because those jurors were stricken for cause and the remaining jurors indicated that they could decide the case on the evidence before them); *United States v. Wade*, 467 F.2d 1226, 1228-29 (8th Cir. 1972) (affirming denial of mistrial motion where potential juror claimed that one of the defendants had "shot [her] son"). Staten thus has not established that the failure to declare a mistrial was based on unreasonable applications of United States Supreme Court precedent.

### b. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, one must establish (1) that "counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

For the performance prong, the Court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," without second-guessing trial counsel's strategic decisions. *Id.* at 689-90; *see also White v. Helling*, 194 F.3d 937, 941 (8th Cir. 1999) (holding that

the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect," and "[o]nly reasonable competence, the sort expected of the ordinary fallible lawyer . . . is demanded by the Sixth Amendment") (internal citation omitted). Staten must "overcome a 'strong presumption' that his counsel's actions constituted reasonable trial strategy under the circumstances." *Sanders v. Trickey*, 875 F.2d 205, 207 (8th Cir. 1989) (quoting *Strickland*, 466 U.S. at 689).

The prejudice prong "requires proof 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992) (quoting *Strickland*, 466 U.S. at 694).

Failure to satisfy either prong is fatal to the claim of ineffective assistance of counsel. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) ("We need not reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness.").

### i. The Decision Not to Request a Change of Venue

Staten argues that his trial counsel was ineffective because he failed to move for a change of venue, despite Staten's purportedly having requested a change "due to his family's criminal notoriety in Pettis County and surrounding counties." Respondent contends that pretrial and trial counsel did not file for change of venue for strategic reasons and that Staten was not prejudiced because the venire members were asked whether they were familiar with Staten's family and no prospective juror who answered in the affirmative served on the jury.

Pretrial counsel testified during post-conviction proceedings that he was aware that Staten family members were the subjects of several criminal cases, that the "Staten name probably would have been something [he] would have considered, you know, with other factors, too," and that he may have discussed with Staten that the Staten name might have a reputation in Pettis County.

Doc. 6 (PCR Transcript), Tr. 7:17-8:10. Pretrial counsel stated that he nonetheless did not seek a change of venue because he considered Pettis County to be a diverse county and thought it was not "a bad place to try a case, necessarily." *Id.* at 9:14-10:16. He could not recall if Staten specifically asked for a change of venue, but he "d[id]n't believe he did." *Id.* at 8:11-17. Pretrial counsel testified that he believed a change of venue was the attorney's decision, but he said he would seek one if a client insisted. *Id.* at 9:14-22.

Trial counsel testified post-conviction that he did not recall speaking with Staten about a change of venue. *Id.* at 20:23-21:4.

Staten testified that he told his attorneys he needed a change of venue because he would not get a fair trial in Pettis County as his family and last name had a bad reputation there. *Id*. 76:13-78:15.

The motion court denied relief with the following explanation:

> both lawyers testified as to their strategical reason for not asking for trial in another County. The Court finds that the movant did not ask either of his attorneys for a change of venue. Counsel believed that Pettis County was a more diverse county and thus Mr. Staten would have a better chance of prevailing there than in a more rural county where the case was likely to be transferred. Trial counsel relied on his mentor's knowledge and experience on this point. Counsel also indicated that he would have asked for a change of venue if Mr. Staten had asked for it. In making such a decision on venue the Court cannot fin[d] that the movant's attorneys failed to exercise the customary skill and diligence that a reasonably competent attorney would under the same or similar circumstances. No prejudice has been shown by counsel.

Doc. 7-7 (PCR appeal legal file), pp. 44-45 (Findings of Fact and Conclusions of Law, pp. 1-2).

The court of appeals affirmed, noting that the motion court did not find Staten's testimony credible and that the court of appeals must defer to the motion court on issues of credibility. Doc. 7-10 (PCR Decision Denying Relief), p. 6. The appellate court found that the claim failed for the

additional reason that the decision to remain in Pettis County constituted "reasonable trial strategy." *Id.* at 7. Finally, the court of appeals held that Staten failed to show that he suffered prejudice. *Id.* at 8.

Staten contends that the trial court's denial of his claim was based on an unreasonable determination of the facts because it concluded, despite Staten's testimony to the contrary, that Staten did not ask his counsel to request a change of venue. As discussed above, Staten must present clear and convincing evidence to overcome the presumption that the state court's factual determination was correct. 28 U.S.C. 2254(e)(1). Staten's testimony at sentencing that he had asked for a change of venue is not sufficient to overcome the presumption in light of the evidence in the record. During the post-conviction relief hearing, pretrial counsel testified that he did not believe Staten asked for a change of venue. He also testified that he would seek a change of venue if a client insisted on it. During sentencing, trial counsel stated that he did not have any information about whether Staten had requested a change of venue. Following trial, when Staten claimed that he had asked for a change of venue, the court responded, "I'm going to suggest to you that my record doesn't reflect any of what you just told me." Doc. 7-1, p. 412. The motion court found that Staten's testimony that he had asked his attorneys to request a change of venue was not credible, and the appellate court properly deferred to the motion court on that issue of credibility. Doc. 7-10, p. 6. This Court too must defer to the trial court as to the credibility determination. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Even if Staten did request a change in venue, that alone would not establish that his attorneys' conduct was unreasonable. Pretrial counsel stated that he thought Pettis County was a

more diverse place, implying that it was a better place than surrounding, more rural counties to try a criminal case. Doc. 7-1, Tr. 10:17-23 ("I probably would have kept that in Pettis County unless there was a lot of insistence."). Staten has not suggested, let alone established, why the decision to not change venue because the surrounding rural counties might have produced a less favorable jury pool was unreasonable.

Staten has also failed to establish that counsel's failure to move for a change of venue prejudiced him. First, Staten's argument that local jurors were likely to be biased against him is conclusory. Moreover, it is contradicted by other evidence in the record. Venire members were asked whether they were familiar with Staten's family, and prospective jurors who said they knew members of his family did not serve on the jury. Doc. 7-10, p. 8; *see, e.g.*, *Moss v. State*, 10 S.W.3d 508, 513 (Mo. banc 2000) (finding no prejudice where none of the twelve jurors indicated that they knew the defendant, and the four jurors who had heard of the charged offense in the media or from friends indicated that they had only a vague recollection of the events and that they could be fair and impartial). Moreover, as the appellate court noted, "Staten's . . . father had been convicted by a jury in Cooper County in a prosecution that had originated in Pettis County and another Staten had been acquitted by a Pettis County jury." Doc. 7-10, p. 8. These outcomes undermine Staten's argument that change of venue would have resulted in a different result for him. Moreover, "even in cases that involve . . . allegations of intense community prejudice, absent some showing that the jurors had pre-conceived notions as to petitioner's guilt, this argument will fail." *Lane v. Purkett*, No. 06 CV 1053 DDN, 2008 WL 5171344, at *6 (E.D. Mo. Dec. 9, 2008) (citing, *inter alia*, *Hobbs v. Lockhart*, 791 F.2d 125, 128-29 (8th Cir. 1986)). In short, Staten has failed to show that, but for his attorneys' failure to request a change of venue, the outcome of the proceeding would have been different. *Lawrence*, 961 F.2d at 115.

Staten's arguments concerning his attorneys' failure to seek a change of venue do not warrant habeas relief.

### ii. Failure to Present Evidence of Developmental Age

Staten argues that he received ineffective assistance of counsel because his trial counsel failed to present evidence that his developmental age was closer to that of a juvenile than an adult and to object to the sentencing judge's refusal to consider his age at the time of the offense. Respondent argues that this ground is procedurally defaulted because Staten failed to raise it during state post-conviction proceedings and also that it is substantively without merit.

"A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of a claim, thereby precluding consideration of federal claims on direct appeal." *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citation omitted). Missouri Supreme Court Rule 29.15 "provides the exclusive procedure by which" a person convicted of a felony after trial who claims that the conviction or sentence imposed violates the constitution "may seek relief in the sentencing court." Mo. Sup. Ct. R. 29.15(a). There is no dispute that Staten failed to raise in the sentencing court his claim for ineffective assistance of counsel with respect to developmental age.

Staten argues that he nonetheless can overcome the default because the defaulted claim is substantial. Staten claims that the failure occurred because of the ineffective assistance of post-conviction counsel, and that the issue warrants an evidentiary hearing, where "trial counsel will testify that he should have presented evidence of Mr. Staten's developmental age to the jury and court and objected to the court's refusal to consider Mr. Staten's age as a mitigating factor."

"Inadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." Under *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). When "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as is the case in Missouri, "a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances." *Id.* at 14. The first, which is not applicable here, is where the state court did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. *Id.* The second "is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of" *Strickland*. *Id.*

Thus, to avoid having his claim deemed procedurally defaulted, Staten must establish both that his post-conviction counsel was ineffective and also "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," that is, "the prisoner must demonstrate that the claim has some merit." *Id.*

Staten acknowledges that his post-conviction counsel raised the issue of developmental age. Doc. 10 (Petitioner's Traverse) p. 14 ("Mr. Staten . . . has alleged that defense counsel did make an argument regarding his age . . . ."). However, Staten argues that post-conviction counsel should have presented "authority and studies . . . to support an argument that his age counseled for leniency." As a preliminary matter, the evidence that Staten argues should have been presented in support of his post-conviction argument for leniency does not alone suggest that his counsel's performance was unreasonable because that evidence does not show that counsel presented Staten in an incorrect or incomplete light. *See Clark v. Chappell*, 936 F.3d 944, 978 (9th Cir. 2019) ("Much of the evidence that Clark argues, post-conviction, should have been presented goes to explain *why* Clark was the way that Allen presented him to the jury, not that Clark was presented

in an *incorrect* or *incomplete* light to the jury. The evidence developed post-conviction does not suggest that Allen's presentation of Clark's troubled background was objectively unreasonable.").

More fundamentally, Staten was 20 years old at the time of the offense. The rules concerning special consideration of youth set forth in the referenced Supreme Court cases do not apply as a matter of law to those eighteen and over. The Supreme Court has held that, although "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18, . . . a line must be drawn," and "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Thus, federal appellate courts have found that those 18 years of age and older are not entitled to the same consideration of youth to which those under 18 years are entitled. *See Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1237 (11th Cir. 2015) ("Even though Melton was over the age of 18 at the time he committed his capital offense, he argues that his sentence was invalid because some of the factors of youth were still present when he committed the crime. . . . Whatever one thinks of the abstract legal question about 'mental and emotional age,' we cannot say that it is debatable whether the Supreme Court of Florida unreasonably applied clearly established federal law. The Supreme Court of the United States has not decided the issue, and dicta from the most relevant decision suggest that the Supreme Court of Florida was correct in its resolution of the issue."); *United States v. Marshall*, 736 F.3d 492, 500 (6th Cir. 2013) ("Considerations of efficiency and certainty require a bright line separating adults from juveniles. For purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line. We decline to create exceptions . . . . An immature adult is not a juvenile. . . . Because Marshall is not a juvenile, he does not qualify for the Eighth Amendment protections accorded to juveniles."); *United States v. Dock*, 541 F. App'x 242, 245 (4th Cir. 2013) (rejecting argument that district court should have

imposed less than the mandatory minimum sentence on 20-year old). In light of such case law, because Staten was over eighteen years old at the time of the offense, his counsel cannot be said to have acted "outside the wide range of professionally competent assistance" (*Strickland*, 466 U.S. at 687) in not presenting more evidence or "authority" concerning Staten's age and corresponding development for the sentencing court's consideration nor in deciding not to object to the sentencing judge's decision to give no weight to Staten's relative youth.

IV. **Conclusion**

For the reasons discussed above, Staten's petition for habeas relief is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 25, 2021
Jefferson City, Missouri